IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FLAME S.A., | ) | 14 MISC 0146 |
| | ) | Underlying Litigation: |
| Plaintiff, | ) | Case Nos: 2:13-cv-658; 2:13-cv-704 |
| | ) | United States District Court |
| GLORY WEALTH SHIPPING PTE LTD. | ) | Eastern District of Virginia |
| | ) | |
| Consolidated Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| INDUSTRIAL CARRIERS, INC. | ) | |
| VISTA SHIPPING, INC., and | ) | |
| FREIGHT BULK PTE. LTD., | ) | RECEIVED |
| | ) | MAY 12 2014 |
| Defendants. | ) | U.S.D.C.S.D. |

### SPECIALLY APPEARING DEFENDANT FREIGHT BULK PTE. LTD.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH THE SUBPOENA ISSUED TO JAMES H. POWER ESQ.

COMES NOW, specially appearing Defendant FREIGHT BULK PTE. LTD. (hereinafter "FBP"), by and through undersigned counsel, subject to its restricted appearance in the U.S. District Court for the Eastern District of Virginia pursuant to Supplemental Rule E(8), the pending appeal to the Fourth Circuit Court of Appeals, and its pending dispositive motions to Vacate and Dismiss the Attachment. Without conceding jurisdiction or waiving any other issue, FBP files this Memorandum in Support of its Motion to Compel Compliance with the Subpoena served upon James H. Power Esq.

## PRELIMINARY STATEMENT

On April 16, 2014, FBP a subpoena *ad testificandum* upon Mr. Power (the "Subpoena") in connection with the above-referenced action, which is currently pending in the U.S. District Court for the Eastern District of Virginia.

Mr. Power, a partner at Holland & Knight, LLP ("H&K"), is lead counsel for Consolidated Plaintiff Glory Wealth Shipping Pte Ltd. ("Glory Wealth") in the matter. In addition to serving as an advocate, Mr. Power has also put his own personal knowledge at issue—most glaringly, by filing a 17-page declaration purportedly summarizing unproduced records that Mr. Power claims to have reviewed, and setting forth his own factual conclusions based upon this review. Mr. Power signed the declaration "under penalty of perjury," and expressly attested that the assertions contained therein were "true and correct to the best of [his] knowledge and belief based on the information [he had] reviewed."

FBP served the Subpoena primarily in an attempt to examine the bases for Mr. Power's "knowledge and belief" and to understand the information that Mr. Power considered when he prepared and drafted his sworn declaration. The Subpoena, therefore, directs Mr. Power to appear at a deposition to provide testimony regarding his purported knowledge and belief.

To date, however, Mr. Power has refused to appear for his deposition. Although apparently content to act as a testifying fact witness when it suits his client's interests, Mr. Power claimed in his objections and during the meet and confer on this matter that any attempt to further explore his attested-to knowledge and belief would somehow invade the attorney-client privilege. But Mr. Power cannot have it both ways. If he wishes to testify to factual assertions that support his client's position—as he did when he submitted his declaration—then he must also subject himself to deposition by an opposing party.

Indeed, not only has Mr. Power failed to appear for the noticed deposition as commanded by FBP's Subpoena; he has failed to file or have filed on his behalf a motion to quash or for a protective order. He is simply refusing to testify. For this reason, and those described in more detail below, FBP now moves to compel Mr. Power to comply with the Subpoena and set a date certain for his deposition.

## FACTS

This action was instituted in November 2013, when Plaintiff Flame, S.A. ("Flame") filed a complaint and motion for issuance of process of maritime attachment and garnishment in the U.S. District Court for the Eastern District of Virginia, seeking Supplemental Rule B attachment of the vessel M/V CAPE VIEWER (the "Cape Viewer"), which was then in port at Norfolk, Virginia.[1] The action filed by Flame under the district court's admiralty jurisdiction sought a judgment that FBP, the owner of the Cape Viewer, was the alter ego of defendants Vista Shipping, Inc. ("Vista"), and Industrial Carriers, Inc. ("ICI"), the two other defendants named in Flame's complaint. The gravamen of Flame's complaint is that the now-defunct ICI owed Flame a USD $19 million judgment debt arising out of certain litigation in the English High Court of Justice, Queen's Bench Division. Flame alleged that ICI, Vista, and FBP, along with Viktor Baransky, Sergei Baransky, and others not named in Flame's complaint, disregarded corporate form in order to funnel ICI's assets into other entities including FBP.

FBP has vigorously denied Flame's allegations and appeared specially pursuant to Supplemental Rule E(8) to contest the district court's exercise of admiralty jurisdiction and seek vacatur of the attachment of the Cape Viewer and dismissal of the complaint. The district court has thus far denied FBP's motions to vacate and dismiss, and FBP's appeal of the court's finding

---

[1] A copy of Flame's complaint is attached hereto as Exhibit 1 to the Declaration of Robert Hamburg, executed on May 7, 2014 ("Hamburg Decl.").

3

of subject matter jurisdiction is currently pending before the U.S. Court of Appeals for the Fourth Circuit.

On December 18, 2013, Glory Wealth filed a verified complaint against FBP, Vista, and ICI, in the Eastern District of Virginia, along with a request for Rule B attachment of the Cape Viewer.[2] Glory Wealth's allegations were substantially similar to those raised by Flame in its complaint: that ICI owed Glory Wealth a judgment debt arising out of English litigation, and that Vista, FBP, and other non-parties are alter egos of ICI and therefore liable for the judgment debt.

Glory Wealth's complaint (and subsequent amended verified complaint) was not verified by any person affiliated with Glory Wealth. Rather, the amended verified complaint was verified only by Mr. Power, counsel for Glory Wealth. Mr. Power indicated that he "read the foregoing complaint and know[s] the contents thereof, and the same are true and correct to the best of [his] knowledge." (E.D. Va. Action ECF No. 54). The district court granted Glory Wealth's motion for Rule B attachment on December 19, and the next day consolidated the two actions.[3] (Collectively, the "E.D. Va. Action.") FBP has since moved to vacate Glory Wealth's attachment of the Cape Viewer, and that motion remains pending with the district court.

On April 9, 2014, the parties were scheduled to appear before Magistrate Judge Lawrence R. Leonard for a hearing to resolve certain discovery-related disputes, including motions to compel filed by Flame. Approximately one hour before the hearing, Mr. Power filed a document styled as a "Notice of Joinder" in Flame's motions to compel. Attached to the notice was a 17-page declaration that Mr. Power attested to under penalty of perjury ("Power Declr.")[4] In that

---

[2] A copy of Glory Wealth's verified complaint and amended verified complaint are attached collectively hereto as Exhibit 2 to the Hamburg Declr.

[3] Nevertheless, Glory Wealth did not properly attach the Cape Viewer until late February, after repeated admonishment by the district court.

[4] A copy of Mr. Power's declaration is attached hereto as Exhibit 3 to the Hamburg Declr.

declaration, Mr. Power set forth "facts and circumstances" that Mr. Power claimed to be "true and correct" that purport to vouch for the truth of the litigation position adopted by Glory Wealth in the E.D. Va. Action. Power Declr. ¶ 50.

Mr. Power's declaration contains the type of testimony typically offered by a fact or expert witness, not counsel to a party in adversarial proceedings. To wit, Mr. Power testifies that:

- FBP's litigation positions "are simply untrue" (*id.* at ¶ 7) and that "Glory Wealth has amassed voluminous evidence supporting each and every one of the alter ego, fraudulent transfer and successor in interest allegations" (*id* at ¶ 8).

- Mr. Power "believe[s] the records demonstrate" that money was wrongfully diverted from Industrial Carriers, Inc.'s estate. *Id.* at ¶ 17.

- Mr. Power "believe[s] the wire transfers will unequivocally demonstrate" that the prior deposition testimony of Mr. Viktor Baransky as "unsubstantiated and fanciful." *Id.* at ¶ 47.

*See also id.* at ¶ 14 (testifying to Mr. Power's "belief" as to what certain "records demonstrate"); *id.* at ¶ 25 (testifying regarding whether there is a "plausible explanation" for certain alleged financial transactions); *id.* at ¶ 29 (testifying that a fact "is utterly implausible"); *id* at ¶ 42 (Mr. Power testifying to what be "believe[s] the records further demonstrate" regarding certain alleged financial transactions); *id.* at ¶ 44 (Mr. Power testifying "[b]ased on [his] review of the wire transfer records"); *id.* at ¶ 44 (Mr. Power testifying that Vista Shipping, Inc. has the burden of "produc[ing] additional evidence to contradict the wire transfers"); *id.* at ¶ 45 (Mr. Power testifying as to what be believes "the records demonstrate" regarding charter hire payments); *id.* at ¶ 46 (Mr. Power testifying to what undisclosed expert reports "will most likely demonstrate"). To be clear: these are not arguments laid out in briefs or legal memoranda, they are statements of fact that Mr. Power "declare[d] under penalty of perjury" were "true and correct to the best of [his] knowledge and belief." *Id.* ¶ 50.

5

In addition, Mr. Power testifies that he has reviewed certain wire transfer information and opines on the significance of that evidence. *See id.* at ¶ 47 ("In sum, I believe the wire transfers will unequivocally demonstrate the impossibility of Viktor Baranskyi's unsubstantiated and fanciful contention that he turned 'a million dollars in a suitcase' from his mother into more than $100 million of un-mortgaged vessels via Vista's 'lawful' chartering activity alone."). Mr. Power also made certain statements pertaining to his experience and determinations based on the evidence. *See, e.g., id.* at ¶ 11 ("I have been retained by numerous other clients in similar situations to enforce judgments . . . . I have in prior cases determined that there are third party sources capable of producing information similar to what might be expected from a defendant's financial institution."); *id.* at ¶ 13 ("In my experience, the Intermediary Banks maintain records of the wire transfers they process for a minimum of 6-8 years."). However, not a single bank record or evidence of a wire transfer was attached to Mr. Power's declaration.

Although he did not attach any evidence (beyond his own statements of belief) to his declaration, Mr. Power indicated that he obtained certain supporting evidence using subpoenas issued under the authority of the New York Supreme Court for New York County. Indeed, FBP has learned that GW and Mr. Power have instituted another, virtually identical action against FBP, Vista, and ICI in New York state court. *See Glory Wealth Shipping Pte Ltd. v. Indus. Carriers, Inc. et al.*, Index No. 650590/2014 (N.Y. Sup. Ct. Feb. 21, 2014) (the "New York State Action"). Glory Wealth is actively litigating the New York State Action, including serving subpoenas on several banks, resulting in production of the wire transfer information that purportedly formed the basis for Mr. Power's opinions, beliefs, and testimony.

In response to Mr. Power's testimonial statements, FBP has undertaken two initial steps. First, FBP has moved to strike Mr. Power's declaration as violative of the Federal Rules of

6

Evidence, the Rules of Professional Conduct in Virginia and New York, and various federal laws governing bank privacy. (*See* E.D. Va. Action ECF No. 176, 177). Second, FBP served subpoenas for documents on H&K and Mr. Power, and a deposition subpoena upon Mr. Power.[5] FBP's subpoena to Mr. Power commanded that he appear to be deposed on May 6, 2014.

Rather than complying with the Subpoena, Mr. Power served objections upon counsel for FBP.[6] His chief objection appears to be that the Subpoena seeks information that is protected by the attorney-client privilege or the work product doctrine. At a meet and confer conducted on May 5, 2014, between Mr. Power, counsel for H&K, and counsel for FBP, Mr. Power doubled down on his defiance of the properly-issued Subpoena, unequivocally stating that he would not appear for the deposition.

Pursuant to Rule 45(d)(2)(B)(i), FBP now files the instant Motion to Compel Compliance. Because the Subpoena commands compliance at locations in the Southern District of New York, this Court is the proper venue for this Motion. *See* Fed. R. Civ. P. 45(d)(2)(B)(i) (permitting the serving party to "move the court for the district where compliance is required for an order compelling production").

## ARGUMENT

### I. MR. POWER'S DEPOSITION SHOULD BE COMPELLED

#### A. Mr. Power's "Objections" to the Subpoena are not a Proper Response

Mr. Power's sole response to the subpoena *ad testificandum* served upon him was to lodge the omnibus objections described above; *i.e.*, that the materials FBP seeks are protected by

---

[5] In meet and confer discussions, counsel for Holland & Knight has represented that all responsive documents in its possession will be produced in the forthcoming production of its client, Glory Wealth. Based on this representation, FBP has elected to withhold filing a motion to compel documents from H&K until it has had the opportunity to review Glory Wealth's production. A copy of the subpoena issued to H&K is attached as Exhibit 4 to the Hamburg Declr. A copy of the subpoena issued to Mr. Power is attached as Exhibit 5 of the Hamburg Declr.

[6] A copy of the objections is attached as Exhibit 6 to the Hamburg Declr.

7

privilege. Mr. Power has not filed a motion to quash and he did not appear for the deposition as commanded in the subpoena. Fatally for Mr. Power's position, however, there is no mechanism in Rule 45 to object to a subpoena for testimony. Rule 45(d)(2)(B) is the only subsection of Rule 45 that speaks to the filing of objections to a subpoena. And that subsection speaks *only* to subpoenas *duces tecum*. See Fed. R. Civ. P. 45(d)(2)(B) ("A person commanded *to produce documents or tangible things or to permit inspection* may serve on the party or attorney designated in the subpoena a written objection . . . .").

The rule on objections even appears under the sub-heading "Command to Produce Materials or Permit Inspection" contained at Rule 45(d)(2). The rule says *nothing* about noting objections to a subpoena to testify. Rather, Rule 45 appears to contemplate that a party seeking to resist a subpoena *ad testificantum* file a motion to quash. See Fed. R. Civ. P. 45(d)(3)(B) (referring only to "a person subject to or affected by a subpoena" without regard to type of subpoena). "The recipient of a subpoena may not ignore the subpoena then later question its validity; the proper procedural mechanism to challenge the validity of a subpoena is a *timely* motion to quash." *Carey v. Air Cargo Assoc., Inc.*, 2011 WL 446654 at *3 (S.D.N.Y. 2011).

By failing to either appear or timely file a motion to quash, FBP submits that Mr. Power has failed to preserve any challenge to his deposition. In *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002), a judge of this Court opined on the conduct of a non-party, Wyeth, who failed to either appear at the time and place indicated in the subpoena or file a timely motion to quash. Although the court denied the motion to compel on the basis that the requesting party failed to seek leave of the court to issue the subpoena, the court nevertheless felt the need to "comment on Weyeth's behavior in this dispute."

> Although Innomed violated Rule 30(a)(2)(B) by not seeking leave of the Court before issuing its subpoena, Wyeth's blatant disregard of the subpoena is

8

inexcusable. Had Innomed properly sought leave of this Court, Wyeth's cross-motion to quash would be untimely. *See Nova Biomedical Corporation v. i-STAT Corporation*, 182 F.R.D. 419, 422 (S.D.N.Y.1998). Although Rule 45(c)(3)(A)(iv) requires that the motion to quash be timely without defining what "timely" is, it is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled deposition. Wyeth's failure to timely join the issue unnecessarily delayed its resolution. Coming as it does, so near the scheduled trial, this type of transgression may not be repeated in this case, but should still be noted." *Id.* at 239.

*Id.* Accordingly, by not moving to quash, Mr. Power has waived his right to challenge the validity of the subpoena *ad testificandum*.

### B. Mr. Power Has Waived Privilege and the Work Product Doctrine By Putting His Perosnal Knowledge and Belief At Issue

Further, even if Mr. Power's objections had been properly lodged, his assertion of privilege is utterly without merit. Mr. Power waived the attorney-client privilege when he testified in his declaration. "It is well-established that a party waives the attorney-client and work product privileges whenever it puts an attorney's opinion into issue, by calling the attorney as an expert witness or otherwise." *Herrick Co., Inc. v. Vetta Sports, Inc.*, 1998 WL 637468 at *3 (S.D.N.Y. 1998) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *cf. Drimmer v. Appleton*, 628 F. Supp. 1249, 1252 (S.D.N.Y. 1986) (applying New York law and holding the client "voluntarily permitted his attorney to testify regarding the matter to which he now asserts a privilege, and must be deemed to have waived the privilege by implied consent").

Here, even a cursory review of the declaration tendered in the E.D. Va. Action by Mr. Power indicates that Glory Wealth has put Mr. Power's "opinion into issue." The entirety of the declaration consists of factual statements made under oath (*e.g.* Ex. Power Declr. ¶ 37 ("[T]he sale proceeds of the M/V FATHER S were directed to Sea Traffic for no apparent consideration."), Mr. Power's personal interpretation of evidence that he has collected (*see id.* at ¶ 47 ("In sum, I believe the wire transfers will unequivocally demonstrate the impossibility of

Viktor Baranskyi's unsubstantiated and fanciful contention that he turned 'a million dollars in a suitcase' from his mother into more than $100 million of un-mortgaged vessels via Vista's 'lawful' chartering activity alone.")), or Mr. Power's assertions based on his own personal experience (*see id.* at ¶ 11 ("I have in prior cases determined that there are third party sources capable of producing information similar to what might be expected from a defendant's financial institution."). In short, Mr. Power offered fact and expert testimony in his declaration. He may not now resist a lawful subpoena on the basis that the grounds for his testimony are privileged.

By revealing previously confidential information regarding its "investigation" into the facts of this case, Mr. Power has waived Glory Wealth's attorney-client privilege on these facts. *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998) ("[I]mplied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege.").

### C. Mr. Power's Conduct is Inappropriate, and the Court Should Compel His Deposition

As discussed *supra*, Mr. Power has gone on the record in this case, made certain statements about the evidence, and attested to the truth of those statements. Unquestionably, Mr. Power is attempting to serve dual roles in this litigation: counsel for Glory Wealth, and a witness in support of Glory Wealth's cause. But rules regarding the professional conduct of attorneys plainly prohibit Mr. Power from being both an advocate and a witness. The Rules of Professional Conduct of Virginia (the state where Mr. Power filed his declaration) are clear that Mr. Power's testimony was improper:

> Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.... The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on

evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Va. R. Prof. Conduct 3.7 at cmt. 1-2.

The Court of Appeals of New York (where Mr. Power is a member of the bar) is similarly clear that an attorney such as Mr. Power may not act as a witness on behalf of his client:

> Recognizing that the roles of an advocate and of a witness are inconsistent, and that it is from a public image point of view "unseemly" for a lawyer in a trial also to argue his own credibility as a witness, the Code of Professional Responsibility directs that a lawyer *who ought to be called* as a witness on behalf of his client shall withdraw from the conduct of the trial and his firm shall not continue representation in the trial.

*S & S Hotel Ventures Ltd. P'ship v. 777 S. H. Corp.*, 69 N.Y.2d 437, 444 (N.Y. 1987) (emphasis in original).

Compounding Mr. Power's problematic conduct is the fact that he has provided factual and expert testimony on subjects at issue in the E.D. Va. Action, and yet has indicated that he will not subject himself to examination based on that testimony. FBP will suffer prejudice if Mr. Power is permitted to give evidence on behalf of his client's case, then refuses to submit to a proper examination as to the foundation for the evidence he has offered. FBP is permitted by the Federal Rules of Civil Procedure to take depositions of fact and expert witnesses, and by making himself a witness in the E.D. Va. Action, Mr. Power must be required to similarly be deposed by counsel for FBP.

Accordingly, FBP requests that this Court compel Mr. Power to comply with the subpoena and set a date-certain for his deposition.

11

## CONCLUSION

For the reasons stated above, FBP respectfully requests that this court enter an order setting a date certain for the deposition of Mr. Power, as required by FBP's subpoena *ad testificadum*.

Dated: May 12, 2014

Respectfully submitted,

By: /s/ [signature]
Robert W. Hamburg
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
Tel: 212.506.2500
Fax: 212.262.1910

*Attorney for Specially Appearing Defendant FREIGHT BULK PTE. LTD*

# CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2014, I caused the foregoing Memorandum in Support of FBP's Motion to Compel Compliance with Subpoenas Issued to Holland & Knight LLP and James H. Power to be hand delivered Clerk of the Court, which in turn will provide electronic notification of and access to such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Dated: May 12, 2014

By:/s/ 
Robert W. Hamburg
**MAYER BROWN LLP**
1675 Broadway
New York, NY 10019-5820
Tel: (212) 506-2500
Fax: (212) 262-1910